# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

MALCOM WILLIAMS )
)
      **Plaintiff,** )
)     **No. 16 C 2303**
   **v.** )
)     ***Chief Judge Rubén Castillo***
CITY OF CHICAGO et al., )
)
      **Defendants.** )

## <u>MEMORANDUM OPINION AND ORDER</u>

Malcom Williams ("Plaintiff") brings this suit pursuant to 42 U.S.C. § 1983, claiming

that the City of Chicago (the "City") and Chicago police officers Kyle Mignari ("Officer

Mignari"), Mark Gutkowski, Daniel O'Brien, Michael Roman, Herbert Betancourt, Quang H.

Nguyen ("Officer Nguyen"), Verlisher Syas, John Czarnik, Marco Di Franco, Gerardo Perez,

Peter Fleming, and David Showers (collectively, "Defendants"[1]) deprived Plaintiff of his

constitutional rights. (R. 29, Am. Compl. ¶¶ 26-43.) Plaintiff also brings related state-law claims

against Defendants. (*Id.* ¶¶ 44-64.) The parties have filed cross-motions for summary judgment

pursuant to Federal Rule of Civil Procedure 56. (R. 128, Defs.' Mot. for Summ. J. ("MSJ");

R. 133, Pl.'s MSJ.) Also before the Court are Plaintiff's and Defendants' motions to strike

statements of fact submitted with their motions for summary judgment. (R. 156, Defs.' Mot. to

Strike; R. 170, Pl.'s Mot. to Strike.) For the reasons stated below, Plaintiff's motion for summary

judgment is denied, and Defendants' motion for summary judgment is granted in part and denied

in part. Both motions to strike are denied.

---

[1] For the individual police officer Defendants, the Court refers to them collectively as the "Defendant officers."

**RELEVANT FACTS**

The following facts are undisputed unless otherwise stated. Plaintiff lives in Chicago at 1461 East 66th Place. (R. 144, Defs.' Resp. to Pl.'s Facts at 9, 19; R. 151, Pl.'s Resp. to Defs.' Facts at 4.) Plaintiff's home is a "gray stone," single-family home. (R. 144, Defs.' Resp. to Pl.'s Facts at 9, 19; R. 151, Pl.'s Resp. to Defs.' Facts at 4.)

The parties largely dispute the circumstances surrounding the reliability and existence of a confidential informant whose information ultimately led to the issuance of a warrant to search Plaintiff's home. Defendants' version of the facts is that Officer Mignari observed a confidential informant buy crack cocaine from a man named "Charles" from Plaintiff's home. (R. 155-25, Mignari Dep. Tr. at 244-71.) Based on this information, Officer Mignari drafted a complaint for a warrant to search Plaintiff's home and presented it to Judge Edward Maloney of the Cook County Circuit Court on July 2, 2015. (R. 144, Defs.' Resp. to Pl.'s Facts at 7.) The judge signed the warrant that afternoon. (*Id.*) The complaint for search warrant was written and sworn to in its entirety by Officer Mignari. (*Id.*)

Plaintiff, on the other hand, submits that the confidential informant does not exist or that Officer Mignari fabricated his account of the drug transaction that occurred at Plaintiff's home. (R. 134, Pl.'s Mem. at 9 n.2.) Plaintiff points to inconsistencies between Officer Mignari's description of the confidential informant and documents produced that describe the confidential informant's criminal history. (R. 151, Pl.'s Resp. to Defs.' Facts at 6-8.) Specifically, Officer Mignari testified at his deposition that the confidential informant did not have an extensive criminal history, (R. 155-25, Mignari Dep. Tr. at 270), but the criminal history report for the confidential informant does reveal an extensive criminal history, (R. 155-21, Criminal History Report). Plaintiff also provides evidence showing that the confidential informant's "handler" did

not know the identity of the confidential informant referenced in the warrant to search Plaintiff's home. (R. 151, Pl.'s Resp. to Defs.' Facts at 8.)

It is undisputed that the complaint for search warrant that was ultimately signed by Judge Maloney stated that there was probable cause to search "'Charles' a male black, 5'09"-5'10", 165-175 lbs, 27-32 years of age, medium complexion, short black hair and the residence of 1461 E. 66th Pl., a grey stone building, 1st floor[.]" (R. 129-6 at 39-41, Compl. for Search Warrant.) The warrant also permitted seizure of "[c]ocaine . . . and any evidence showing residency, any paraphernalia used in the weighing, cutting or mixing of illegal drugs," as well as "money [and] any records detailing illegal drug transactions[.]" (*Id.* at 39.) The complaint for search warrant states that the probable cause to search Plaintiff's home is based on a confidential informant who told Officer Mignari that he had purchased crack cocaine at Plaintiff's address several times from a man named "Charles." (*Id.* at 39-40.) Based on this information, Officer Mignari stated that he organized a controlled buy at Plaintiff's address in which Charles and the confidential informant entered Plaintiff's home and the confidential informant bought crack cocaine from Charles. (*Id.* at 40.) Officer Mignari submitted reliability reports tracking the confidential informant's reliability before the controlled buy that occurred at Plaintiff's home, and Officer Mignari found the confidential informant to be reliable based on his prior dealings with the informant. (R. 155-28, O'Brien Dep. Tr. at 144-80.) Officer Mignari, when drafting the complaint for search warrant, sought to search only the first floor of 1461 East 66th Place because his "understanding from [his] experience dealing with gray stones is that [there] is more than one unit" and that some single-family, gray-stone homes have "illegal apartments" inside of them. (R. 155-25, Mignari Dep. Tr. at 249.) Thus, Officer Mignari was not sure whether the gray stone was a single-family home or multi-unit apartment building. (*Id.*)

On July 2, 2015, the Defendant officers executed the search warrant. (R. 151, Pl.'s Resp. to Defs.' Facts at 45.) Before executing the search warrant, they met at the Third District Police Station to discuss how they would execute the search warrant. (R. 155-25, Mignari Dep. Tr. at 89-90.) When the Defendant officers executed the warrant, they entered Plaintiff's home through the front door, and upon entering, they observed that Plaintiff's home was a single-family residence with no separate apartment units within the building. (R. 151, Pl.'s Resp. to Defs.' Facts at 45-46.) The Defendant officers entered areas of Plaintiff's home other than the first floor, including the second and third floors as well as the basement. (R. 144, Defs.' Resp. to Pl.'s Facts at 24-25.) The Defendant officers disagree whether there was a strong smell of marijuana when they entered that suggested the presence of a "massive" amount of marijuana or marijuana plants inside Plaintiff's home. (R. 151, Pl.'s Resp. to Defs.' Facts at 49-50; *see also* R. 155-25, Mignari Dep. Tr. at 106-07, 139; R. 155-28, O'Brien Dep. Tr. at 95.)

There is no dispute that Plaintiff arrived at his home approximately 15 to 30 minutes after the Defendant officers entered. (R. 144, Defs.' Resp. to Pl.'s Facts at 26.) The Defendant officers detained Plaintiff during the search, but he was free to leave after the search warrant was executed. (R. 151, Pl.'s Resp. to Defs.' Facts at 47.) While he was detained in his home during the search, Plaintiff spoke with several Defendant officers, including Officer Mignari. (R. 144, Defs.' Resp. to Pl.'s Facts at 26-27.) Plaintiff also provided Defendant officers with identification and proof that he lived at the address. (*Id.* at 27.) One of the Defendant officers executing the search warrant knew Plaintiff's father, who was formerly a police officer, and had previously met Plaintiff at a church service. (*Id.* at 27-28.) Officer Mignari knew that Plaintiff was not the person referred to as "Charles" in the search warrant and that Plaintiff was not a "target" of the search warrant. (*Id.* at 27; R. 151, Pl.'s Resp. to Defs.' Facts at 47-48.) While the

search of Plaintiff's home was ongoing, Officer Mignari suggested to Plaintiff that the person named "Charles" could be a prior resident of the home since Plaintiff had just recently moved into the house at the time, but Plaintiff responded that he knew the prior owners and knew that none of them were named Charles or involved in the sale of controlled substances. (R. 155-29, Williams Dep. Tr. at 50.) Defendants, however, continued searching Plaintiff's home for another 30 to 45 minutes after Plaintiff spoke with Officer Mignari. (R. 144, Defs.' Resp. to Pl.'s Facts at 28.) Plaintiff testifies that at one point during the search, he explained that he was an employee for a real estate company and that the Defendant officers had "the wrong guy." (R. 155-29, Williams Dep. Tr. at 51.) Plaintiff testified that the Defendant officers then "started to calm down looking at [him] like maybe" they did target the wrong person. (*Id.*)

No drugs or contraband were found on the first floor of Plaintiff's home. (R. 144, Defs.' Resp. to Pl.'s Facts at 26.) The only narcotics recovered during the execution of the search warrant was a small amount of marijuana, which was found in a bedroom on the second floor. (R. 151, Pl.'s Resp. to Defs.' Facts at 48; R. 155-25, Mignari Dep. Tr. at 146.) Plaintiff testified that some of the Defendant officers apologized to him on their way out the door after they had finished their search. (R. 155-29, Williams Dep. Tr. at 53.) Officer Mignari, on his way out, explained to Plaintiff the circumstances surrounding the search warrant, and Plaintiff stated that "he knows that there's a lot of drug dealing going on in the block." (R. 155-25, Mignari Dep. Tr. at 129-30.) Plaintiff testified that after the search, he was left with a negative view of police officers, was humiliated in front of his neighbors, and temporarily suffered a strained relationship with his father. (R. 155-29, Williams Dep. Tr. at 121-25.)

## PROCEDURAL HISTORY

On February 17, 2016, Plaintiff filed his initial complaint (R. 1, Compl.) On September 2, 2016, Plaintiff filed an amended complaint, which is the latest complaint in this case. (R. 29, Am. Compl.) Plaintiff brings seven counts against Defendants: a claim pursuant to "*Franks v. Delaware*"[2] related to Officer Mignari's procurement of the search warrant (Count I); unlawful search and entry of Plaintiff's home in violation of Section 1983 (Count II); unlawful detention pursuant to Section 1983 (Count III); false imprisonment (Count IV); intentional infliction of emotional distress ("IIED") (Count V); a claim for indemnification against the City (Count VI); and a claim for *respondeat superior* liability against the City (Count VII). (*Id.* ¶¶ 26-64.)

On March 2, 2018, Defendants moved for summary judgment against Plaintiff on all counts in the amended complaint. (R. 128, Defs.' MSJ at 2-3.) Defendants argue that Count I fails because no reasonable jury could find that the warrant to search Plaintiff's home was deliberately or recklessly procured through false information. (R. 130, Defs.' Mem. at 4, 6-12.) Defendants also argue that Officer Mignari was the only Defendant involved in the procurement of the search warrant; therefore, Plaintiff cannot proceed to trial on Count I against the remaining Defendants. (*Id.* at 5.) With respect to Count II, Defendants maintain that there is no evidence in the record supporting Plaintiff's claim that the warrant to search his home was unlawful or executed unlawfully. (*Id.* at 12-21.) Defendants submit that summary judgment is warranted for

---

[2] Plaintiff's characterization of this claim is an apparent reference to the U.S. Supreme Court's decision in *Franks v. Delaware*, 438 U.S. 154, 156 (1978), which addresses Fourth Amendment violations that occur if a search warrant is procured through false statements. *See Franks*, 438 U.S. at 155-56 ("In the event that at that hearing the allegation of perjury or reckless disregard is established by the defendant by a preponderance of the evidence, and, with the affidavit's false material set to one side, the affidavit's remaining content is insufficient to establish probable cause, the search warrant must be voided and the fruits of the search excluded to the same extent as if probable cause was lacking on the face of the affidavit.").

Counts III and IV—Plaintiff's claims for unlawful detention and false imprisonment—because Plaintiff was lawfully detained during the execution of a lawful search warrant. (*Id.* at 21-22.)

Defendants argue that Plaintiff's IIED claim (Count V) fails because he provides no evidence showing that he suffered severe emotional distress. (*Id.* at 22-24.) They contend that the Court should grant summary judgment in their favor as to Plaintiff's indemnification and *respondeat superior* claims (Counts VI and VII) because the underlying claims these theories of secondary liability are based upon fail as a matter of law. (*Id.* at 24-25.) Finally, Defendants argue that the Court should dismiss all claims pending against Officer Nguyen with prejudice because he has not been properly served with the summons and complaint. (*Id.* at 25.)

In response, Plaintiff argues that disputed issues of fact preclude summary judgment in Defendants' favor as to the claims against the Defendant officers. (R. 152, Pl.'s Resp. at 8-16.) Plaintiff argues that because his claims against the Defendant officers survive summary judgment, so do the indemnification and *respondeat superior* claims against the City. (*Id.* at 16.)

Plaintiff also moves for summary judgment, but only as to Counts I, II, and III. (R. 133, Pl.'s MSJ at 2.) With respect to Count I, Plaintiff contends that there is no dispute that the search warrant was procured through Officer Mignari's "lies and omissions." (R. 134, Pl.'s Mem. at 9-14.) Plaintiff argues that he is entitled to summary judgment on Count II because there is no dispute that the search warrant was invalid. (*Id.* at 6-9.) Plaintiff further argues that the search of his home was unconstitutional as a matter of law because Defendants' search exceeded the search warrant's scope and because Defendants continued searching his home after they became aware that the facts justifying the search warrant were untrue. (*Id.* at 14-15.) As for Count III, Plaintiff maintains that summary judgment is proper on his Section 1983 unlawful detention claim because it is undisputed that Defendants lacked probable cause to detain him. (*Id.* at 15.) In

response, Defendants argue that Plaintiff points to no evidence supporting his arguments. (R. 143, Defs.' Resp. at 2-15.)

On May 3, 2018, Defendants filed a motion to strike Plaintiff's Local Rule 56.1 statement of additional facts and his response to Defendants' statement of facts. (R. 156, Defs.' Mot. to Strike at 7-8.) Defendants argue that Plaintiff's filings fail to comply with the Court's local rules and therefore should be stricken. (*Id.*) Plaintiff opposes this motion. (R. 158, Pl.'s Resp. to Mot. to Strike.) On June 4, 2018, Plaintiff filed a motion to strike a "reply" statement of facts that Defendants filed in support of their motion for summary judgment. (R. 170, Pl.'s Mot. to Strike at 1-2.) In response, Defendants argue that their reply is permitted so that they can respond to additional facts raised by Plaintiff. (R. 173, Defs.' Resp. to Mot. to Strike at 4-5.)

## LEGAL STANDARD

Federal Rule of Civil Procedure 56 provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citation omitted). "A genuine dispute as to any material fact exists if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Kvapil v. Chippewa Cty.*, 752 F.3d 708, 712 (7th Cir. 2014) (citation and internal quotation marks omitted). In deciding whether a dispute exists, the Court must "construe all facts and reasonable inferences in favor of the non-moving party." *Citizens for Appropriate Rural Roads v. Foxx*, 815 F.3d 1068, 1074 (7th Cir. 2016).

Under Rule 56, the movant has the initial burden of establishing that a trial is not necessary. *Sterk v. Redbox Automated Retail, LLC*, 770 F.3d 618, 627 (7th Cir. 2014). "That burden may be discharged by showing . . . that there is an absence of evidence to support the nonmoving party's case." *Id.* (citation and internal quotation marks omitted). If the movant carries this burden, the nonmovant "must make a showing sufficient to establish the existence of an element essential to that party's case." *Id.* (citation and internal quotation marks omitted). The nonmovant "must go beyond the pleadings (*e.g.,* produce affidavits, depositions, answers to interrogatories, or admissions on file) to demonstrate that there is evidence upon which a jury could properly proceed to find a verdict in [their] favor." *Id.* (alteration in original) (citation and internal quotation marks omitted). "The existence of a mere scintilla of evidence, however, is insufficient to fulfill this requirement." *Wheeler v. Lawson*, 539 F.3d 629, 634 (7th Cir. 2008). "Conclusory statements, not grounded in specific facts" also cannot defeat a motion for summary judgment. *Bordelon v. Bd. of Educ. of the City of Chi.*, 811 F.3d 984, 989 (7th Cir. 2016) (citation and internal alteration omitted). In addition, not all factual disputes will preclude the entry of summary judgment, only those that "could affect the outcome of the suit under governing law." *Outlaw v. Newkirk*, 259 F.3d 833, 837 (7th Cir. 2001) (citation omitted).

In deciding the motions, the Court cannot weigh conflicting evidence, assess the credibility of the witnesses, or determine the ultimate truth of the matter, as these are functions of the jury. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Omnicare, Inc. v. UnitedHealth Grp., Inc.*, 629 F.3d 697, 704-05 (7th Cir. 2011). Instead, the Court's sole function is "to determine whether there is a genuine issue for trial." *Tolan v. Cotton*, 134 S. Ct. 1861, 1866 (2014) (quoting *Anderson*, 477 U.S. at 249).

**ANALYSIS**

I.      ***"Franks v. Delaware"* Claim (Count I)**

Plaintiff refers to his claim in Count I as a "*Franks v. Delaware* violation," (R. 29, Am. Compl. ¶¶ 26-33), which is an apparent reference to the U.S. Supreme Court's decision in *Franks v. Delaware*, 438 U.S. 154 (1978). That case, however, was a criminal case and not a civil case like this one. *See Franks*, 438 U.S. at 155 (framing the issue before the Court as one concerning the constitutional rights of a defendant in a criminal proceeding). *Franks* discusses Fourth Amendment violations that occur when a search warrant is procured through false statements that are necessary to a finding of probable cause, and Plaintiff alleges that Officer Mignari deprived him of his constitutional rights by obtaining a warrant through false statements. *See id.* ("In the event that . . . the allegation of perjury or reckless disregard [to procure a search warrant] is established by the defendant by a preponderance of the evidence, and, with the affidavit's false material set to one side, the affidavit's remaining content is insufficient to establish probable cause, the search warrant must be voided[.]"). Because "Section 1983 creates a species of tort liability for the deprivation of any rights, privileges, or immunities secured by the Constitution," *Manuel v. City of Joliet*, 137 S. Ct. 911, 916 (2017), the Court reads Count I to bring a Section 1983 claim against Officer Mignari for procuring a warrant through false statements in violation of the Fourth Amendment.[3] *See Naham v. Haljean*, No. 08 C 519, 2015 WL 227982, at *5 (N.D. Ill. Jan. 15, 2015) (observing in a Section 1983 case that "Naham's allegations of false affidavits, fictitious confidential informants, and tampered police records speak to the validity of the search warrant, which is an issue under the Fourth Amendment").

---

[3] The Court notes that both parties interpret Plaintiff's "*Franks v. Delaware*" claim in this manner as well. (*See* R. 130, Defs.' Mem. at 4; R. 152, Pl.'s Resp. at 8-11.)

10

To establish a Section 1983 claim, Plaintiff must demonstrate that the individual defendants: "(1) acted under the color of state law; and (2) deprived him of a constitutional right." *Estate of Perry v. Wenzel*, 872 F.3d 439, 452 (7th Cir. 2017), *cert. denied*, 138 S. Ct. 1440 (2018). "A warrant request violates the Fourth Amendment if the requesting officer knowingly, intentionally, or with reckless disregard for the truth, makes false statements in requesting the warrant and the false statements were necessary to the determination that a warrant should issue." *Betker v. Gomez*, 692 F.3d 854, 860 (7th Cir. 2012) (citation omitted). "This includes an officer's failure to disclose facts that she knew would negate probable cause." *Archer v. Chisholm*, 870 F.3d 603, 615 (7th Cir. 2017) (citation and internal quotation marks omitted).

"[A] reckless disregard for the truth can be shown by demonstrating that the officer entertained serious doubts as to the truth of . . . statements, had obvious reasons to doubt their accuracy, or failed to disclose facts that he or she knew would negate probable cause." *Betker*, 692 F.3d at 860 (citation and internal quotation marks omitted). "But even officers who knowingly or recklessly submit an affidavit containing falsehoods may receive qualified immunity" in a civil suit for damages "if they show an objectively reasonable basis for believing that the affidavit still demonstrated probable cause." *Archer*, 870 F.3d at 615; *see also Betker*, 692 F.3d at 860 ("Qualified immunity shields a government official from liability for civil damages unless his or her conduct violates a clearly established principle or constitutional right of which a reasonable person would have known at the time.").

There is no dispute that the Defendant officers acted under the color of state law during the incidents in question. (R. 144, Defs.' Resp. to Pl.'s Facts at 7.) Therefore, the dispositive question on summary judgment is whether there is enough evidence to create a triable issue as to whether Officer Mignari violated Plaintiff's Fourth Amendment rights by obtaining a warrant to

search Plaintiff's home through false information. *See Estate of Perry*, 872 F.3d at 452; *Betker*, 692 F.3d at 860.

The parties vigorously dispute the existence and reliability of the confidential informant referenced in the search warrant. (R. 151, Defs.' Resp. to Pl.'s Facts at 6-17.) Defendants argue that Plaintiff's evidence does not cast doubt on the confidential informant's existence and reliability, but Plaintiff does point to inconsistencies between Officer Mignari's description of the confidential informant and the criminal history report that is purportedly associated with the confidential informant. (*Id.* at 6-8.) Plaintiff also cites testimony showing that the informant's "handler" did not know the identity of the informant referenced in the search warrant. (*Id.* at 8; *see also* R. 155-28, O'Brien Dep. Tr. at 47-49, 56-57, 59, 65-66, 75-83, 109, 114, 155, 209.) Defendants, however, present evidence tending to show that the confidential informant existed and was reliable, including testimony from Officer Mignari stating that he personally witnessed the informant buy narcotics in front of Plaintiff's home. (R. 129, Defs.' Facts at 4; R. 129-4, Mignari Dep. Tr. at 151-53, 177-87.) Officer Mignari also submitted reports tracking the confidential informant's reliability that tend to prove that the confidential informant existed and was reliable. (R. 155-28, O'Brien Dep. Tr. at 144-80.)

The Court cannot resolve these factual disputes related to the existence and reliability of the confidential informant on a motion for summary judgment. *Sterk*, 770 F.3d at 627. A reasonable jury could conclude that Officer Mignari deliberately relied on false information to obtain a warrant if it believes that the confidential informant did not exist or did not participate in the controlled buy referenced in the search warrant. *See Betker*, 692 F.3d at 860. Conversely, a reasonable jury could conclude that Officer Mignari did not rely on false information if it finds Officer Mignari's testimony to be credible. *See id.*

These factual disputes are material to whether Mignari's warrant application violated Plaintiff's Fourth Amendment rights and preclude summary judgment. *See Anderson*, 477 U.S. at 255. To determine whether any false information or omissions were necessary to a finding of probable cause, the Court must "eliminate the alleged false statements, incorporate any allegedly omitted facts, and then evaluate whether the resulting 'hypothetical' affidavit would establish probable cause." *Betker*, 692 F.3d at 862. "A search-warrant application will be sufficient to support a probable-cause finding if, based on the totality of the circumstances, the affidavit sets forth sufficient evidence to induce a reasonably prudent person to believe that a search will uncover evidence of a crime." *Id.* (citation and internal quotation marks omitted). "Probable cause deals with beliefs, not certainties," and it is a "fluid concept" that "depends on the context in which it is being assessed" and "the factual and practical considerations of everyday life." *Suarez v. Town of Ogden Dunes*, 581 F.3d 591, 595 (7th Cir. 2009) (citations and internal quotation marks omitted). "Probable cause is only a probability or substantial chance of criminal activity, not a certainty that a crime was committed." *Id.* at 596 (citation omitted).

Officer Mignari's application for a search warrant is based heavily on information that he claims he received from the confidential informant. (R. 129-6 at 39-41, Compl. for Search Warrant; R. 130, Defs.' Mem. at 7.) If the Court disregards the information in the warrant relating to the confidential informant, there is little or no remaining information upon which a reasonably prudent person would believe that a search of Plaintiff's home would uncover evidence of a crime. *See Betker*, 692 F.3d at 862. Therefore, if Plaintiff proves at trial that the confidential informant does not exist or that Officer Mignari fabricated the accounts of criminal activity detailed in the search warrant, a reasonable jury could find that, but for false information or omissions, the warrant lacked probable cause and resulted in a violation of Plaintiff's Fourth

Amendment rights. *See id.* at 862-63 (affirming denial of summary judgment where "[e]liminating the disputed statements would strip [the defendant's] affidavit of details essential to a finding of probable cause"); *United States v. Sidwell*, 440 F.3d 865, 869 (7th Cir. 2006) ("[A] controlled buy, *when executed properly*, is a reliable indicator as to the presence of illegal drug activity." (emphasis added)). On the other hand, Defendants have presented evidence suggesting that the confidential informant existed, and a reasonable jury could find that Officer Mignari provided truthful information in the search warrant application. (R. 129-4, Mignari Dep. Tr. at 151-53.) Thus, a reasonable jury could find that the warrant to search Plaintiff's home was supported by probable cause and that Officer Mignari did not violate Plaintiff's Fourth Amendment rights. *See Archer*, 870 F.3d at 616 ("Because no facts that would negate probable cause were withheld, the warrant cannot be rejected on this ground."). The Court, therefore, must deny both motions for summary judgment.

Plaintiff's motion for summary judgment tries to expand the grounds for liability against Defendants in Count I, arguing that he was deprived of his Fourth Amendment rights because the search warrant application lacked particularity and because it "contained a sufficient number of obvious internal contradictions and ambiguous statements that it calls into question whether the judge acted as a neutral magistrate." (R. 134, Pl.'s Mem. at 6-9.) There are, however, no allegations in the amended complaint that the search warrant lacked particularity or that call into question the neutrality of the judge that issued the search warrant. (*See* R. 29, Am. Compl.) Instead, Plaintiff's attack on the search warrant in Count I is limited to allegations that the warrant was procured through Officer Mignari's false statements and omissions. (*Id.* ¶¶ 26-33.) Plaintiff may not expand his amended complaint through summary judgment briefs by raising new claims that were not fairly noticed in the amended complaint. *See Auston v. Schubnell*, 116

F.3d 251, 255 (7th Cir. 1997) ("He did not include the promissory estoppel claim in his complaint or his amended complaint, adding it only at the summary judgment stage. This is too late in the day to be adding new claims."); *Savage v. Finney*, No. 12 CV 2398, 2012 WL 2374687, at *3 (N.D. Ill. June 20, 2012) (noting that "a brief cannot amend a complaint and add new legal claims" and collecting cases). The Court, therefore, denies Plaintiff's motion for summary judgment based on the search warrant's lack or particularity or the issuing judge's lack of neutrality.

Even if the court did consider these grounds for summary judgment, the Court finds that Plaintiff fails to show that he is entitled to judgment as a matter of law on either of these grounds. "In order to be valid, a search warrant must: (1) be issued by a neutral and disinterested magistrate; (2) establish probable cause that the evidence sought in the warrant will aid in obtaining a conviction of a particular offense; and (3) describe with particularity the things to be seized and the place to be searched." *Archer*, 870 F.3d at 614. The Fourth Amendment requires that search warrants "particularly describ[e] the place to be searched, and the persons or things to be seized." U.S. CONST. amend. IV. "[A]lthough warrants must describe the objects of the search with reasonable specificity, the Constitution does not insist that they be elaborately detailed." *Archer*, 870 F.3d at 616 (citation and internal quotation marks omitted). Contrary to Plaintiff's argument related to ambiguities about the location to be searched, the search warrant for Plaintiff's home contains enough facts regarding the place to be searched— "1461 E. 66th Pl., a grey stone building, 1st floor located in . . . Chicago," (R. 129-6 at 39-41, Compl. for Search

Warrant)—to defeat summary judgment.[4] *See Archer*, 870 F.3d at 616 (ruling that the location was described with sufficient particularity because it described the suspect's home as the specific location to be searched); *Montalvo v. Adreani*, No. 10 C 7044, 2013 WL 1181490, at *6 (N.D. Ill. Mar. 21, 2013) (finding that the search warrant satisfied the particularity requirement because "[t]he warrant here particularly identified the place to be searched"). Plaintiff argues that Officer Mignari did not conduct enough research to identify the correct person living at the address in the search warrant, but that argument "confuses the Fourth Amendment's warrant particularity requirement with the reasonableness requirement against which" Officer Mignari's investigation must be measured. *Montalvo*, 2013 WL 1181490, at *6. Therefore, the Court rejects any suggestion that the warrant lacked particularity as a matter of law.

With respect to Plaintiff's claim that the judge issuing the search warrant lacked neutrality, "[p]roving that a judge was not 'neutral and detached' is difficult to do; such arguments rarely succeed because they demand exceptional circumstances." *Archer*, 870 F.3d at 614. Plaintiff argues that the judge issuing the search warrant was not neutral because he did not ask Officer Mignari any questions, and Plaintiff brazenly speculates that "[t]his means either the judge did not read the various ambiguities and contradictions or did not care." (R. 134, Pl.'s Mem. at 9.) These assertions are directed toward the judge's diligence—not his impartiality— and they are plainly insufficient to prove the type of bias that would render a search warrant

---

[4] Plaintiff argues that the warrant application implies that the place to be searched "was the first floor of a multi-unit building" even though the address is that of a single-family home, but this argument at best raises a factual dispute that cannot be resolved on summary judgment. FED. R. CIV. P. 56(a); *Cooper v. Dailey*, No. 07-CV-2144, 2010 WL 1415986, at *5 (N.D. Ill. Mar. 31, 2010) ("A number [of] courts of appeals have concluded in analogous cases that the reasonableness of police officers' failure to realize that they were at a residence not anticipated in a search warrant is a question for the trier of fact."). Officer Mignari did not testify conclusively as to whether he believed Plaintiff's home was an apartment building as opposed to a single-family home. (R. 155-25, Mignari Dep. Tr. at 249 (stating that "[it] was a possibility" that Plaintiff's home might have been a multi-unit apartment building).)

invalid. *See Archer*, 870 F.3d at 614 (rejecting challenge to search warrant based on judge's claimed failure to review a warrant because the challenge "relate[d] only to the judge's diligence" and was irrelevant as to whether the judge was "neutral and detached"). The Court, therefore, rejects Plaintiff's arguments for summary judgment, and both parties' motions for summary judgment are denied as to Count I.

Defendants ask that the Court grant summary judgment in their favor on Count I as to all Defendants other than Officer Mignari, but there this no need to do so. (R. 130, Defs.' Mem. at 5.) Count I does not provide fair notice of a claim against any Defendants other than Officer Mignari. (R. 29, Am. Compl. ¶¶ 28, 32 (alleging that "Defendant Mignari provided false statements of material fact which were included in support of the Complaint for Search Warrant" and "[a]s a result of Defendant Mignari's *Franks* violation, Plaintiff was injured").) To the extent Plaintiff argues that other Defendants executed the search warrant, (R. 134, Pl.'s Mem. at 7), the execution of a search warrant is an issue separate and apart from its procurement, and Plaintiff presents evidence that Officer Mignari alone procured the search warrant. *See Archer*, 870 F.3d at 614-18 (analyzing claims related to procurement and execution of search warrant separately); *Jones v. Wilhelm*, 425 F.3d 455, 462 (7th Cir. 2005) ("In evaluating an alleged violation of the Warrant Clause of the Fourth Amendment, it is helpful to distinguish between the two distinct phases of a search warrant; the issuance of the search warrant and the execution of the search warrant."); *Minix v. Canarecci*, 597 F.3d 824, 833 (7th Cir. 2010) ("[I]ndividual liability under § 1983 requires *personal involvement* in the alleged constitutional deprivation." (emphasis added, citation, and internal quotation marks omitted)). Plaintiff also concedes that "Count I is

only directed at Mignari." (R. 152, Pl.'s Resp. at 8.) Summary judgment, therefore, is denied as to Count I.[5]

## II.    Unlawful Search and Entry (Count II)

Both parties seek summary judgment in their favor on Plaintiff's Section 1983 claim for Defendants' allegedly unconstitutional search of Plaintiff's home. (R. 130, Defs.' Mem. at 12-21; R. 134, Pl.'s Mem. at 14-15.) Plaintiff claims that Defendants' search of his home was unlawful because the Defendant officers searched the second floor, third floor, and basement of his home even though the warrant only authorized a search of the first floor, and because the Defendant officers continued searching Plaintiff's home after they no longer suspected any crime occurring at Plaintiff's home. (R. 134, Pl.'s Mem. at 14-15.) Defendants, on the other hand, argue that it is undisputed that the search warrant was supported by probable cause and that the Defendant police officers' search did not exceed the scope of the warrant. (R. 130, Defs.' Mem. at 12-21.)

"A Fourth Amendment search or seizure may be unreasonable because it was either (1) based on an invalid warrant or (2) unreasonably executed." *Stamps v. Hernandez*, No. 08 C 2196, 2010 WL 3713686, at *3 (N.D. Ill. Sept. 14, 2010). "A warrant cannot be executed by persons who know it to be ambiguous." *Guzman v. City of Chicago*, 565 F.3d 393, 397 (7th Cir. 2009). A plaintiff's Fourth Amendment rights are violated if a police officer recognizes that a search warrant is ambiguous before its execution but fails to immediately stop execution and seek the

---

[5] The parties also briefly discuss the defense of qualified immunity, (R. 143, Defs.' Resp. at 11-13; R. 152, Pl.'s Resp. at 14-15), but the Court cannot decide on summary judgment whether this defense applies because there are factual disputes relating to the confidential informant's existence and reliability that preclude the Court from determining whether the search warrant was valid. Qualified immunity may not apply if the search warrant is ultimately deemed invalid because it was procured through false information or omissions. *Betker v. Gomez*, 692 F.3d 854, 864 (7th Cir. 2012) (qualified immunity not afforded to police officer who submitted false information to procure a warrant).

necessary clarification to make certain the warrant particularly describes the correct place to be searched. *Jones v. Wilhelm*, 425 F.3d 455, 463 (7th Cir. 2005). "[O]nce [a] mistake is discovered, the government cannot use the authority of the warrant . . . to conduct a search . . . that they know is unsupported by probable cause[.]" *United States v. Ramirez*, 112 F.3d 849, 852 (7th Cir. 1997); *see also United States v. Kelly*, 772 F.3d 1072, 1083 (7th Cir. 2014) (noting that officers are compelled to suspend their search upon realization that the search is unsupported by probable cause). If police officers search a home after "a reasonable officer would have discovered a fatal defect in the warrant," the Court cannot conclude "that the search was a valid execution of that warrant." *Jacobs v. City of Chicago*, 215 F.3d 758, 769 (7th Cir. 2000).

Summary judgment is not proper in this case because a "reasonable jury could find that the Defendants were required to cease the search as soon as they . . . discovered . . . discrepancies between the warrant and reality." *Cooper v. Dailey*, No. 07-CV-2144, 2011 WL 4501557, at *3 (N.D. Ill. Sept. 28, 2011). The record shows a genuine dispute as to the circumstances surrounding the search of Plaintiff's home, including key events that shed light on whether a reasonable officer would have continued searching Plaintiff's home after learning that Plaintiff was not the man referred to as "Charles" in the search warrant, that no one by the name of "Charles" lived in the apartment, and that the contraband detailed in the warrant was not found. For example, one Defendant officer testified that he could not locate anyone named Charles at Plaintiff's home, (*e.g.*, R. 155-28, O'Brien Dep. Tr. at 106), and "could not recall" whether information he obtained provided any basis to believe that Plaintiff was "Charles," (*e.g.*, *id.* at 109). Other Defendant officers admit that they were aware the search warrant only authorized a search of the first floor of Plaintiff's home, yet they searched other areas of the home other than the first floor, found no contraband, and were trained on the "concept of

dissipation of probable cause." (R. 137-17, Showers Admis. at 2-3; R. 137-18, Gutkowski Admis. at 2-3; R. 137-19, O'Brien Admis. at 2-3; R. 137-20, Betancourt Admis. at 1-4; R. 137-21, Czarnik Admis. at 1-5; R. 137-22, Di Franco Admis. at 1-5; R. 137-23, Roman Admis at 1-5; R. 137-24, Fleming Admis. at 1-5; R. 137-25, Syas Admis. at 1-4; R. 137-26, Perez Admis. at 1-4.)[6] There is also evidence that the search of Plaintiff's home continued after the Defendant officers were aware of facts casting significant doubts on the search warrant's accuracy. (R. 155-25, Mignari Dep. Tr. at 127-39; R. 155-29, Williams Dep. Tr. at 51.) On the other hand, there is evidence that provides probable cause for Defendants' continued search— Officer Mignari believed that there was criminal activity inside Plaintiff's home that was consistent with the search warrant given that he allegedly smelled cannabis plants or a large amount of marijuana that were being stored in Plaintiff's home when he entered, which required a thorough and lengthy search of Plaintiff's entire home. (R. 155-25, Mignari Dep. Tr. at 106-07.) When these facts implicating all of the Defendant officers are considered together with the investigation of Plaintiff's home as detailed in the search warrant, there exist disputes of material fact that preclude summary judgment. *See Cooper*, 2011 WL 4501557, at *3 ("[W]hether the Defendant Officers reasonably should have known that there was a mistake in the warrants (and therefore should have immediately called off their search) was a genuine question of material fact for the trier of fact.").

---

[6] While some officers claim that they lack sufficient knowledge to admit or deny whether they knew that the search warrant limited the search to the first floor of Plaintiff's home, all officers admit that they participated in a meeting about the execution of the search warrant. (R. 137-17, Showers Admis. at 1; R. 137-18, Gutkowski Admis. at 1; R. 137-19, O'Brien Admis. at 1; R. 137-20, Betancourt Admis. at 1; R. 137-21, Czarnik Admis. at 1; R. 137-22, Di Franco Admis. at 1; R. 137-23, Roman Admis at 1; R. 137-24, Fleming Admis. at 1; R. 137-25, Syas Admis. at 1; R. 137-26, Perez Admis. at 1.) Plaintiff has presented evidence showing Officer Mignari represented that the search warrant was for the first floor of Plaintiff's home at this meeting. (R. 155-25, Mignari Dep. Tr. at 90-93; R. 155-28, O'Brien Tr. at 88.)

Defendant argues that the Defendant officers' "good faith" reliance on the search warrant excuses them from liability even if they executed an invalid search warrant. (R. 130, Defs.' Mem. at 20-21.) "For a warrant search to qualify for the good-faith exception, however, the officers conducting the search must have manifested an objective good-faith belief in the validity of the warrant." *Jones v. Wilhelm*, 425 F.3d 455, 464 (7th Cir. 2005). The same factual disputes described above preclude summary judgment because it is not clear whether the officers believed in good faith that the warrant was valid or whether they instead knew that the warrant was unsupported by probable cause and completely divorced from the reality they encountered during the search. (R. 155-29, Williams Dep. Tr. at 51 (Plaintiff testifying that the Defendant officers "started to calm down looking at [him] like maybe" they had been targeting the wrong person and residence).)

Plaintiff argues that the Defendant officers clearly exceeded the scope of the warrant by searching areas other than the first floor of Plaintiff's home, but the record is not clear whether Officer Mignari or other Defendant officers knew they were searching the wrong address or whether they simply misunderstood the layout of Plaintiff's home. *See United States v. Kelly*, 772 F.3d 1072, 1083 (7th Cir. 2014) (ruling that a search of other parts of a residence not specified in the warrant is lawful and a modified warrant is unnecessary so long as police officers can confirm they are searching the correct residence); *see also United States v. Butler*, 71 F.3d 243, 249 (7th Cir. 1995) (explaining that if a building appears to have several units but is actually being used as a single unit, "a finding of probable cause as to a portion of the premises is sufficient to support a search of the entire structure"). The Court, therefore, finds neither party's summary judgment arguments persuasive and denies both of their motions as to Count II.

## III.   Unlawful Detention (Count III) and False Imprisonment (Count IV)

Defendants argue that they are entitled to summary judgment on Plaintiff's Section 1983 claim for unlawful detention and his state-law claim for false imprisonment because Plaintiff was detained during "a lawfully supported search that was properly executed." (R. 130, Defs.' Mem. at 21.) Plaintiff, on the other hand, argues that summary judgment is warranted in his favor because Defendants lacked probable cause and detained him while executing an invalid search warrant. (R. 134, Pl.'s Mem. at 15.) Both parties' arguments are premised on the search warrant's validity and execution. (R. 130, Defs.' Mem. at 21; R. 134, Pl.'s Mem. at 15.) Because the Court cannot resolve on summary judgment whether the warrant was valid or executed properly for the reasons set forth above, both parties' summary judgment motions as to Counts III and IV are also denied.

## IV.   IIED (Count V)

Next, Defendants argue that the Court should grant summary judgment in their favor on Plaintiff's IIED claim because Plaintiff fails to come forward with any evidence that he suffered severe emotional distress or that the Defendant officers intended to cause Plaintiff severe emotional distress. (R. 130, Defs.' Mem. at 22-24.) An intentional infliction of emotional distress claim under Illinois law requires proof of three elements: "First, the conduct involved must be truly extreme and outrageous." *Cairel v. Alderden*, 821 F.3d 823, 835 (7th Cir.), *cert. denied*, 137 S. Ct. 493 (2016) (citation omitted). "Second, the actor must either intend that his conduct inflict severe emotional distress, or know that there is at least a high probability that his conduct will cause severe emotional distress." *Id.* (citation omitted). "Third, the conduct must in fact cause severe emotional distress." *Id.* (citation omitted); *see also Schweihs v. Chase Home Fin., LLC*, 77 N.E.3d 50, 63 (Ill. 2016), *reh'g denied* (Mar. 27, 2017) (describing the same elements for an IIED claim under Illinois law).

With respect to the third element, "[t]he law intervenes only where the distress inflicted is so severe that no reasonable man could be expected to endure it." *Schweihs*, 77 N.E.3d at 63 (citation omitted). "The intensity and the duration of the distress are factors to be considered in determining the severity." *Id.* (citation omitted). "Shame and embarrassment do not rise to the level of 'severe emotional distress' necessary to sustain an IIED claim." *Parker v. Side by Side, Inc.*, 50 F. Supp. 3d 988, 1022 (N.D. Ill. 2014); *see also Sornberger v. City of Knoxville*, 434 F.3d 1006, 1030 (7th Cir. 2006) (noting that, under Illinois law, emotional distress alone is not sufficient to give rise to a cause of action for IIED and that the emotional distress must be severe). "Although fright, horror, grief, shame, humiliation, worry, etc. may fall within the ambit of the term 'emotional distress,' these mental conditions alone are not actionable." *Honaker v. Smith*, 256 F.3d 477, 495 (7th Cir. 2001) (citation omitted).

In response to Defendants' motion for summary judgment, Plaintiff cites no record evidence showing that he has suffered any severe emotional distress, nor does the Court find any evidence of severe emotional distress in the record. (R. 149, Pl.'s Resp. at 15-16.) Instead, Plaintiff testified that "the police coming to my house the way that they did, using the force that they did . . . had my neighbors looking at me funny[.]" (R. 155-29, Williams Dep. Tr. at 121.) When pressed further about emotional distress, Plaintiff testified that "the main thing" was a strained relationship between him and his father that resulted from the incident, but he clarified that "we're fine now[.]" (*Id.* at 123.) He also testified that he feels like the "system has failed" him and it has affected him "emotionally as [to] how [he] looks at the [police]." (*Id.* at 124-25.) Likewise, in his response to Defendants' proffer of facts, Plaintiff fails to dispute that his emotional damages were limited to embarrassment, a strained relationship with his father, and a distrust of police officers. (R. 151, Pl.'s Resp. to Defs.' Facts at 55-56.) This evidence is

insufficient to survive summary judgment on the IIED claim. *See Cheatham v. City of Chicago*, No. 16 C 3015, 2018 WL 2096373, at *7 (N.D. Ill. May 7, 2018) (granting summary judgment because none of the emotions that the plaintiff claimed she felt as a result of the incident— "offended, scared, embarrassed, apprehensive, concerned"—was sufficient to demonstrate severe emotional distress and because Plaintiff admitted that she never sought medical treatment or saw a counselor); *Posey v. Miro*, No. 11 CV 5660, 2014 WL 3843940, at *5 (N.D. Ill. Aug. 5, 2014) (granting summary judgment because the plaintiff had not seen a counselor for his emotional distress and the only emotional distress he pointed to was the fact that he 'thinks about' the incident 'a lot' and 'gets out of the way' when he sees police officers").

Instead of offering evidence of severe emotional distress, Plaintiff argues that Defendants' conduct alone "establishes that Plaintiff suffered distress." (R. 149, Pl.'s Resp. at 15.) Illinois courts do tend to "merge the issue of the outrageousness of the defendant's conduct with the issue of the severity of the plaintiff's emotional distress[.]" *Honaker*, 256 F.3d at 496. Thus, "a plaintiff may compensate for weak evidence of severe distress by presenting stronger evidence of the outrageousness of defendant's behavior." *Bell v. Vill. of Streamwood*, No. CIV.A. 10 C 3263, 2011 WL 4435664, at *4 (N.D. Ill. Sept. 6, 2011); *see also Dagens v. Vill. of Wonder Lake*, No. 13 C 50216, 2015 WL 540115, at *4 (N.D. Ill. Feb. 10, 2015) (noting that "[s]evere distress must be proved, but in many cases the extreme and outrageous character of the defendant's [conduct] is in itself important evidence that the distress has existed." (citation omitted)). Plaintiff, however, provides no evidence of severe emotional distress that can be overcome by strong evidence of outrageous conduct, and Defendants' conduct—drawing all reasonable inferences in Plaintiff's favor—still cannot overcome the lack of evidence related to severe emotional distress. *See Sidney v. Alejo*, No. 16 C 2041, 2018 WL 3659352, at *8 (N.D. Ill.

Aug. 2, 2018) (granting summary judgment because plaintiff's arrest and incarceration for five hours due to a claimed violation of his constitutional rights could not save his weak evidence on emotional distress). Nor does the Court find the cases that Plaintiff relies on persuasive because those cases either involved far stronger evidence of emotional distress or are not summary judgment cases and therefore deal with a far less stringent standard of review. (*See* R. 149, Pl.'s Resp. at 15-16 (citing *Bristow v. Drake St. Inc.*, 41 F.3d 345, 349 (7th Cir. 1994) (concluding that plaintiff established emotional distress where she suffered hives, stomach pains, vomiting, weight loss, and severe alteration of her personality); *Kolegas v. Heftel Broad. Corp.*, 607 N.E.2d 201, 213 (Ill. 1992) ("The facts alleged in support of the outrageous character of the defendants' conduct are sufficient to support the additional allegation that the plaintiffs suffered severe emotional distress as a result of that conduct."); *Wall v. Pecaro*, 561 N.E.2d 1084, 1088 (Ill. App. Ct. 1990) (denying motion to dismiss, observing that the defendant "may ultimately prevail by . . . obtaining summary judgment," but at the pleading stage "an action should not be dismissed . . . unless it is clear that no set of facts can be proven . . . which would entitle the plaintiff to relief")).) The Court, therefore, grants summary judgment in Defendants' favor on Plaintiff's IIED claim.

## V.  Indemnification (Count VI) and *Respondeat Superior* (Count VII)

Next, Defendants seek summary judgment on Plaintiff's claims against the City for indemnification and *respondeat superior*. (R. 130, Defs.' Mem. at 24-25.) Defendants argue that these claims must fail because the underlying claims upon which they are based cannot survive summary judgment. (*Id.*)

"Indemnification is applicable if the Defendant Officers, while acting within the scope of their employment, are liable for any" of the Section 1983 claims asserted. *Ivy v. Powers*, No. 08 C 3826, 2009 WL 230542, at *2–3 (N.D. Ill. Jan. 30, 2009); *see also* 745 ILL. COMP. STAT. 10/9-

102 ("A local public entity is empowered and directed to pay any tort judgment or settlement for compensatory damages (and may pay any associated attorney's fees and costs) for which it or an employee while acting within the scope of his employment is liable[.]"). Accordingly, because Plaintiff still has viable claims Section 1983 against the City's employees that are based on actions within the scope of their employment, the Court denies summary judgment as to Plaintiff's claim for indemnification. *Patrick v. Mathews*, No. 16-CV-10118, 2017 WL 1739935, at *4 (N.D. Ill. May 4, 2017) ("But because the § 1983 claim against Fapso survives, so too does the claim for indemnification based on Fapso's alleged constitutional violation.").

Plaintiff's *respondeat superior* claim survives summary judgment for the same reason. Plaintiff still has a viable state-law false imprisonment claim for which the City can be held liable under a theory of *respondeat superior. See Moss v. Singleton*, 110 F. Supp. 3d 876, 886 (N.D. Ill. 2015) ("Dart may be held liable for Singleton's actions under a state law respondeat superior theory if Singleton's shooting of Moss was within the scope of Singleton's employment."); *see also Sroga v. Preckwinkle*, No. 14 C 06594, 2017 WL 345549, at *11 (N.D. Ill. Jan. 24, 2017) (ruling that a *respondeat superior* claim against a municipality was viable to the extent it was premised on a viable state law claim against the municipality's employees for conduct that occurred within the scope of their employment). The Court, therefore, denies Defendants' motion for summary judgment as to Counts VI and VII.

## VI.     The Parties' Motion to Strike and Plaintiff's Failure to Serve Officer Nguyen

The Court now turns to two remaining matters—the parties' motions to strike statements of fact submitted pursuant to Local Rule 56.1 and Defendants' request in its motion for summary judgment to dismiss Officer Nguyen for Plaintiff's failure to properly serve Officer Nguyen.

Local Rule 56.1 requires parties to submit with their motions for summary judgment "a statement of material facts as to which the moving party contends there is no genuine issue and

that entitle the moving party to a judgment as a matter of law[.]" N.D. ILL. L.R. 56.1(a)(3). This statement must "consist of short numbered paragraphs, including within each paragraph specific references to the affidavits, parts of the record, and other supporting materials relied upon to support the facts set forth in that paragraph." *Id.* The Court enjoys broad discretion to strike statements of fact that fail to comply with Local Rule 56.1. *Judson Atkinson Candies, Inc. v. Latini-Hohberger Dhimantec*, 529 F.3d 371, 382 n.2 (7th Cir. 2008) ("We have held that a district court has broad discretion to require strict compliance with Local Rule 56.1."); *see also Stevo v. Frasor*, 662 F.3d 880, 887 (7th Cir. 2011) ("[I]t is clear that the decision whether to apply the rule strictly or to overlook any transgression is one left to the district court's discretion." (citation omitted)). In the interest of justice, the Court denies both parties' motions to strike and declines to exercise its discretion to require strict compliance with Local Rule 56.1 because the Court has otherwise resolved the motions for summary judgment by relying on facts that are properly supported by cites to record evidence.

Turning to whether Officer Nguyen was properly served, Plaintiff maintains that Officer Nguyen was served on September 9, 2016, (R. 151, Pl.'s Resp. to Defs.' Facts at 4), and he relies on a return of service that indicates Officer Nguyen was not personally served but served by delivering a copy of the summons and complaint to the Chicago Police Department. (R. 35, Summons at 2.) "The plaintiff bears the burden to demonstrate that the district court has jurisdiction over each defendant through effective service." *Cardenas v. City of Chicago*, 646 F.3d 1001, 1005 (7th Cir. 2011). "If, on its own or on the defendant's motion, the district court finds that the plaintiff has not met that burden and lacks good cause for not perfecting service, the district court must either dismiss the suit or specify a time within which the plaintiff must

serve the defendant." *Id.* Federal Rule of Civil Procedure 4, which governs service of process in federal court, provides that:

> [A]n individual . . . may be served in a judicial district of the United States by: (1) following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made;[7] or
>
> (2) doing any of the following:
>
>> (A) delivering a copy of the summons and of the complaint to the individual personally;
>>
>> (B) leaving a copy of each at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there; or
>>
>> (C) delivering a copy of each to an agent authorized by appointment or by law to receive service of process.

FED. R. CIV. P. 4(e).

Plaintiff has failed to demonstrate that he served Officer Nguyen in any of the ways permitted under Rule 4, and he instead relies on a document showing that the summons and complaint was merely delivered to the Chicago Police Department. *See Chapman v. U.S. Marshal for N. Dist. of Ill.*, 584 F. Supp. 2d 1083, 1090 (N.D. Ill. 2008) ("Rule 4(e) allows service to be made in one of three ways: (1) a defendant can be personally given a copy of the complaint and summons; (2) a copy of the complaint and summons can be left at the individual's abode with a person of suitable age and discretion; or (3) a copy of the complaint and summons

---

[7] Illinois law allows service on an individual to be made "(1) by leaving a copy of the summons with the defendant personally, (2) by leaving a copy at the defendant's usual place of abode, with some person of the family or a person residing there, of the age of 13 years or upwards, and informing that person of the contents of the summons, provided the officer or other person making service shall also send a copy of the summons in a sealed envelope with postage fully prepaid, addressed to the defendant at his or her usual place of abode, or (3) as provided in Section 1-2-9.2 of the Illinois Municipal Code with respect to violation of an ordinance governing parking or standing of vehicles in cities with a population over 500,000." 735 ILL. COMP. STAT. 5/2-203(a). Plaintiff's delivery of the summons and complaint to the Chicago Police Department does not fall within any of these methods of service. *Cardenas v. City of Chicago*, 646 F.3d 1001, 1005 (7th Cir. 2011) ("Under Illinois law, serving an individual's employer or other putative agent is not sufficient for service on the individual.").

can be personally given to the individual's agent."). Accordingly, the Court concludes that Plaintiff has failed to properly serve Officer Nguyen. *See* FED. R. CIV. P. 4(e). Before dismissing the action against Officer Nguyen, however, the Court must determine whether Plaintiff "has established good cause for failing to effect timely service." *Chapman*, 584 F. Supp. 2d at 1090 (citation omitted). If Plaintiff establishes a valid reason for the delay, the Court must extend the time for service. *See United States v. McLaughlin*, 470 F.3d 698, 700 (7th Cir. 2006) ("[I]f good cause for the delay is shown, the court *must* extend the time for service, while if good cause is not shown, the court has a choice between dismissing the suit and giving the plaintiff more time[.]" (emphasis in original)); *see also* FED. R. CIV. P. 4(m).

The record indisputably shows that Plaintiff lacks any valid reason for his failure to effect service on Officer Nguyen for approximately two years. Defendants filed at least three unopposed motions alerting Plaintiff to the fact that Officer Nguyen had not been properly served, including an unopposed motion that was filed by Defendants on November 18, 2016— well over a year ago. (R. 56, Mot. at 1 n.1 (stating that "[s]ervice on [Officer Nguyen] has not been completed"); R. 60, Mot. at 1 n.1 (same); R. 66, Mot. at 1 n.1 (same).) Even though Plaintiff cannot establish good cause for his failure to timely serve Officer Nguyen, the Court may, "in its discretion, either dismiss the action without prejudice or direct that service be effected within a specified time." *Panaras v. Liquid Carbonic Indus. Corp.*, 94 F.3d 338, 340 (7th Cir. 1996). Factors the Court may consider in its decision include: "(1) whether the expiration of a statute of limitations during the pending action would prevent refiling, (2) whether the defendant evaded service, (3) whether the defendant's ability to defend would be prejudiced by an extension, (4) whether the defendant had actual notice of the lawsuit, and (5) whether the defendant was eventually served." *Cardenas*, 646 F.3d at 1006. Upon careful

consideration of these factors, the Court concludes that they weigh heavily in favor of dismissing the lawsuit without prejudice. There is no evidence that Officer Nguyen evaded service or that he was eventually served, and there is no evidence that Officer Nguyen is aware of this lawsuit. Additionally, Plaintiff has not exercised diligence in requesting an extension for service and instead maintains to this day that he properly served Officer Nguyen. (R. 151, Pl.'s Resp. to Defs.' Facts at 4.)[8] The Court, therefore, dismisses Officer Nguyen from the lawsuit without prejudice. *Cardenas*, 646 F.3d at 1007 (noting that a dismissal for failure to properly serve a defendant should ordinarily be without prejudice).

---

[8] Plaintiff's claim against Officer Nguyen accrued on July 2, 2015, and Plaintiff's Section 1983 claim for unlawful search is subject to a two-year statute of limitations. *See Neita v. City of Chicago*, 830 F.3d 494, 498 (7th Cir. 2016) (noting that "a Fourth Amendment claim accrues at the time of the search or seizure" and that such a claim occurring in Illinois expires two years after the date of accrual). The statute of limitations, therefore, has expired because more than two years have passed since Plaintiff's claim accrued. *See id.*; *Seber v. Unger*, 881 F. Supp. 323, 330 (N.D. Ill. 1995) ("Filing of the original claim without effective service of process does not toll the statute of limitations."). While the running of the statute of limitations is one factor that weighs in Plaintiff's favor for an extension of time to serve Officer Nguyen, "a district court may in its discretion still dismiss a case even after considering that the statute of limitations has run." *Panaras v. Liquid Carbonic Indus. Corp.*, 94 F.3d 338, 341 (7th Cir. 1996); *see also Cardenas v. City of Chicago*, 646 F.3d 1001, 1006 (7th Cir. 2011) ("The district court could have excused the lack of timely service, but we cannot call its choice not to grant an extension unreasonable— especially given both that Plaintiffs' counsel made no attempt to serve Officer Gallegos in the 483 days between removal and the filing of the motion to dismiss and also that another 42 days elapsed before counsel finally served the Office of Legal Affairs.").

## CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment (R. 128) is DENIED IN PART and GRANTED IN PART, and Plaintiff's motion for summary judgment (R. 133) is DENIED. Defendants' motion to strike (R. 156) and Plaintiff's motion to strike (R. 170) are DENIED, and Officer Nguyen is dismissed from the lawsuit without prejudice.

The parties shall appear for a status hearing on September 11, 2018, at 9:45 a.m. for the express purpose of setting a priority trial date. The parties are DIRECTED to reevaluate their settlement positions in light of this opinion and to exhaust all settlement possibilities prior to the status hearing.

ENTERED:

**Chief Judge Rubén Castillo**
**United States District Court**

**Dated: August 27, 2018**

31